UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

MICHAEL J. GILMAN,                )
                                  )
    Plaintiff              )
                                  )
v.                                ) 1:11-cv-00234-GZS
                                  )
SOCIAL SECURITY ADMINISTRATION    )
COMMISSIONER,                     )
                                  )
    Defendant              )

## REPORT AND RECOMMENDED DECISION

The Social Security Administration found that Michael J. Gilman, a younger individual with a history of lumbar back pain and radiculopathy, who underwent L5-S1 laminotomy, partial facetectomy, and excision of a herniated disk, retains the functional capacity to perform substantial gainful activity in occupations existing in significant numbers in the national economy, resulting in a denial of disability insurance and supplemental security income benefits under Title II and Title XVI of the Social Security Act. Gilman commenced this civil action to obtain judicial review. I recommend that the Court affirm the administrative decision.

### STANDARD OF REVIEW

The Court must affirm the administrative decision so long as it applies the correct legal standards and is supported by substantial evidence. This is so even if the record contains evidence capable of supporting an alternative outcome. Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. Richardson v. Perales, 402 U.S. 389, 401 (1971); Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when

supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

## THE ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the January 11, 2011, decision of Administrative Law Judge John Edwards because the Decision Review Board did not complete its review during the time allowed. The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520, 416.920. (R. 1-14, Doc. No. 12-2.[1])

Gilman meets the insured status requirements of Title II through March 31, 2013. At step 1 of the sequential evaluation process, the ALJ found that Gilman has not engaged in substantial gainful activity since December 30, 2007, the date of alleged onset of disability. (R. 9, ¶ 2.) At step 2, the ALJ found that Gilman has the following severe physical/mental impairments: back pain post L5-S1 laminectomy, partial facetectomy, and excision of herniated disc. The ALJ concluded that records associated with alleged knee pain and an anxiety condition did not reflect severe conditions. (R. 10, ¶ 3.) At step 3, the ALJ found that this combination of impairments would not meet or equal any listing in the Commissioner's Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P. (R. 11, ¶ 4.)

Prior to further evaluation at steps 4 and 5, the ALJ assessed Gilman's residual functional capacity. The ALJ found that Gilman's combined impairments leave Gilman with a capacity to perform the full range of light work. (R. 11, ¶ 5.) At step 4, the ALJ found that this degree of limitation precluded past relevant work as a home attendant, janitor, stock clerk, or carpenter, all

---

[1] The Commissioner has consecutively paginated the entire administrative record ("R.") and filed on the Court's electronic docket in a series of attachments to docket entry 12.

of which require a degree of physical exertion beyond the light work category. (R. 13, ¶ 6.)

Gilman was born in 1967, has a high-school equivalency degree, and can communicate in English. (R. 13, ¶ 8.) Because Gilman is a younger individual and the ALJ found a residual functional capacity for the full range of light work, the ALJ concluded that Gilman is "not disabled" by operation of the Commissioner's Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.

### DISCUSSION OF PLAINTIFF'S STATEMENT OF ERRORS

In order to qualify for disability benefits based on something other than a terminal condition, Gilman must demonstrate that he experienced a disabling impairment or combination of impairments that endured for, or would be expected to endure for, a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. The ALJ accepted that Gilman's April 2009 operation addressed a listing-level (*i.e.*, disabling) physical impairment. The question, however, is when the condition became disabling, when it stopped being so, and whether the period of disability spanned 12 months.

Donald Trumbull, M.D., and Peter Webber, M.D., have opined that it is reasonable to conclude that Gilman had the capacity for light work as of Dr. Trumbull's September 2009 assessment. This medical expert opinion provides substantial evidence in support of the ALJ's finding that Gilman could engage in substantial gainful activity by September 2009. Gilman argues that the ALJ erred, however, in regard to assessing the date of onset of his disability. Gilman explains that his back issues began in February 2003 and he references a report from Eastern Maine Medical Center dated February 23, 2003. (Letter of Michael Gilman, filed Nov. 7, 2011, Doc. No. 16.)

At Gilman's second administrative hearing, the ALJ called Peter Webber, M.D., to

address, specifically, whether the pre-operative medical records contained any objective evidence of a disabling level of impairment. (R. 22-23, 27-28.) The operative report describes a "worsening" back condition eventually diagnosed by MRI as a collapsed disk. (Ex. 3F, R. 260-61.) Dr. Webber testified that the record does not contain objective evidence that could reliably support a finding of a listing-level condition prior to January 2009. (R. 31-33.) Dr. Webber acknowledged that there are medical records containing relevant findings dating as far back as 2003 and 2004 (see, e.g., Exs. 14F & 18F, Doc. No. 12-9), but testified that the extent and nature of the impairment could not be determined from those records, other than to say that "at some time things got worse because they did find a ruptured disc." (R. 30.) On questioning from counsel, Dr. Webber was unwilling to concede that evidence of calf-muscle atrophy found by Bruce Tremblay, M.D., in a January 2009 examination demonstrated nerve root compression as of September 2008 or earlier. (R. 38, discussing Ex. 1F, Doc. No. 12-7.)

> On the duration of Gilman's disability, the ALJ found as follows:
>
> Impartial medical expert, Peter Webber, M.D., testified in October 2010, but felt as if he did not have enough evidence to determine whether the claimant met Listing 1.04A prior to his back surgery in April 2009. Dr. Webber testified at the continued hearing in January 2011 that, after a review of the new evidence, there was little objective evidence before January 2009. Therefore, he opined, the claimant did not meet Listing 1.04A for greater than twelve months and thus had the residual functional capacity for Light work . . .

(R. 12.)

In his statement of errors, Gilman speaks of two post-operative events: an unsuccessful attempt at physical therapy (see Ex. 12F, Doc. No. 12-8) and his performance during a functional assessment in December 2009 (see Ex. 8F, Doc. No. 12-7). According to Gilman, these best illustrate his current physical condition. However, the Court's lay assessment of this evidence is not sufficient to override the ALJ's determination that September 2009 marks the outside limit of

4

any period of disability. The ALJ made this finding on the basis of substantial evidence in the form of expert medical opinion. There is no competing expert opinion in the record that evaluates Gilman's functional capacity in terms of the Commissioner's disability standards. The Court is not free to overturn this conclusion on the basis of the December 2009 test or Gilman's failure to complete physical therapy.[2]

As for the onset of a disabling condition, Gilman points to an Eastern Maine Medical Center ER report associated with a workplace injury in 2003 (Ex. 14F, Doc. No. 12-9) and to St. Joseph Hospital treatment records through June 2004 (Ex. 18F), explaining that these mark the beginning of his back issues. However, the record contains evidence of work activity subsequent to the date of injury and Dr. Webber testified that the record depicts episodic concerns that make it virtually impossible to identify an ongoing period of disability or measure where it would fall in terms of residual functional capacity. (R. 42-43.) Gilman is the party with the burden of proof on this particular issue. Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001) ("The applicant has the burden of production and proof at the first four steps of the process.") Dr. Webber has reviewed the records and opined that a period of disability of 12 months or longer cannot reliably be found. This is substantial evidence in support of the ALJ's determination. The Court is not at liberty to reject it based on its own independent assessment of Gilman's medical records.

Finally, Gilman complains that his lack of facility with reading was not considered by the ALJ. He references some speech and language testing that he underwent at the University of Maine that shows a degree of difficulty with reading (Ex. 9F, Doc. No. 12-7). However, the Commissioner's Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, sometimes known as the "Grids," provide that younger individuals with a capacity for the full

---

[2] The physical therapy record does not appear to favor Gilman's position, in any event.

range of light work are not disabled even if they are illiterate and cannot communicate in English.  See id. §§ 200.00, 202.16 (Table 2).  Because substantial evidence supports the ALJ's finding that Gilman has a capacity for the full range of light work, and because Gilman is both literate and articulate in his use of the English language, it was not error for the ALJ to conclude that Gilman "grids out" at step 5 of the sequential evaluation process based on his post-operative residual capacity.  Id. § 202.17.

## CONCLUSION

For the reasons set forth in the foregoing discussion, I RECOMMEND that the Court affirm the Commissioner's final decision and enter judgment in favor of the Commissioner.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

April 17, 2012